11-3787-cv(L)
DePascale v. Sylvania Electric Products, Inc.

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 4th day of February, two thousand thirteen.

Present:
        CHESTER J. STRAUB,
        PETER W. HALL,
        CHRISTOPHER F. DRONEY,

               *Circuit Judges.*

_____

GERARD DEPASCALE, LIAM NEVILLE, JOANNE
DEPASCALE,

      *Plaintiffs-Appellants-Cross-Appellees*,

v.                                  11-3787-cv(L); 11-3894-cv(XAP)

SYLVANIA ELECTRIC PRODUCTS, INC., GTE
CORPORATION, VERIZON COMMUNICATIONS
INC., GTE PRODUCTS OF CONNECTICUT
CORPORATION, GTE OPERATIONS SUPPORT
INCORPORATED, OSRAM SYLVANIA INC.,
OSRAM SYLVANIA PRODUCTS INC.,

      *Defendants-Appellees-Cross-Appellants*.

_____

1

FOR APPELLANTS:  JOSEPH DARIO GONZALEZ, JR., Lee & Fields, APC, Los Angeles, California.

FOR APPELLEES:  FRANK HOLOZUBIEC (William Pratt, *on the brief*), Kirkland & Ellis LLP, New York, New York.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Wexler, *J.*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the district court is AFFIRMED.

Plaintiffs-appellants-cross-appellees Gerard DePascale, Joanne DePascale, and Liam Neville appeal the district court's order granting in part defendants' motion for a new trial pursuant to Fed. R. Civ. P. 59(a). *DePascale v. Sylvania Elec. Prods., Inc.*, 710 F. Supp. 2d 275 (E.D.N.Y. 2010). Following a jury trial on negligence claims resulting in a $12 million verdict in favor of plaintiffs, the district court ordered a new trial limited to the application of the government contractor defense. The second jury trial resulted in a verdict in favor of defendants. Defendants filed a "conditional" cross-appeal raising alleged errors that occurred during the first trial. We assume the parties' familiarity with the facts, procedural history, and issues on appeal.

I.  Applicable Law

We review for abuse of discretion a district court's order granting a new trial on the ground that the verdict was against the weight of the evidence. *Raedle v. Credit Agricole Indosuez*, 670 F.3d 411, 417 (2d Cir. 2012). A verdict is against the weight of the evidence "if and only if [it] is seriously erroneous or a miscarriage of justice." *Farrior v. Waterford Bd. of Educ.*, 277 F.3d 633, 635 (2d Cir. 2002). Unlike a Rule 50 motion for judgment as a matter of law, when considering a motion for a new trial under Rule 59, the district court is not required to view the evidence in the light most favorable to the prevailing party but may weigh the evidence

2

and the credibility of witnesses. *Raedle*, 670 F.3d at 418. The standard a district court applies in reviewing a motion for a new trial is "less stringent" than that for a motion for judgment as a matter of law. *United States v. Landau*, 155 F.3d 93, 104 (2d Cir. 1998). This does not mean, however, that a district court "may freely substitute his or her assessment of the credibility of witnesses for that of the jury simply because the judge disagrees with the jury." *Id.* at 104; *Raedle*, 670 F.3d at 418. Where resolution of the issues at trial depends on an assessment of the credibility of witnesses, district courts should be particularly cognizant of the danger of usurping the jury's function. *See Raedle*, 670 F.3d at 418.

II.     Discussion

In its Rule 59 analysis, the district court did not usurp the jury's functions. In holding that the jury's finding with regard to the government contractor defense was a "miscarriage of justice," the district court relied on the "overwhelming" evidence in favor of applying the defense. *DePascale*, 710 F. Supp. 2d at 286. The district court "combed the record for evidence that could have been relied upon to support the jury's rejection of the government contractor defense" and found "approximately eight pages of testimony (in a transcript comprising 840 pages)." *Id.* The district court noted that some of that testimony—by Dr. Lee Davenport, a former employee at Sylvania—conflicted with the same witness's earlier testimony and with that of another witness with firsthand knowledge of the commercial operations at the Hicksville site, to the extent any existed. Thus, the district court did not rely exclusively on his own assessment of witness credibility in ordering a new trial.

Plaintiffs challenge the district court's decision to limit the issue for retrial to the government contractor defense, rather than ordering a full retrial. Plaintiffs argue that the government contractor defense was so intertwined with other issues resolved at the first trial that

3

the decision to isolate the defense from other issues constituted a manifest injustice. "It is well established that a partial new trial 'may not properly be resorted to unless it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice.'" *Bohack Corp. v. Iowa Beef Processors, Inc.*, 715 F.2d 703, 709 (2d Cir. 1983) (quoting *Gasoline Prods. Co. v. Champlin Ref. Co.*, 283 U.S. 494, 500 (1931)); *see also* Fed. R. Civ. P. 59(a)(1) (permitting a trial court to "grant a new trial on all or some of the issues"). In support of their argument, plaintiffs note that their complaint focuses on conduct occurring after 1987, in stark contrast to the issues central to the government contractor defense, which relate to facts and conduct occurring before 1967. Plaintiffs contend that limiting a retrial to an affirmative defense that focuses on pre-1967 conduct – when plaintiffs' complaint focuses on conduct that occurred twenty years later – is manifestly unjust. To the contrary, however, this argument demonstrates that the issues surrounding the government contractor defense are not inextricably intertwined with other factual issues and that the defense lends itself to a separate and limited retrial. *See Gasoline Prods Co.*, 283 U.S. at 499 (holding that where a verdict has been reached upon one issue of fact, the Seventh Amendment "does not compel a new trial of that issue even though another and separable issue must be tried again"). As the district court determined that the verdict, to the extent it found that the government contractor defense did not apply, was against the weight of the evidence, the court did not exceed the bounds of its discretion in limiting the retrial to the separate and distinct issue of the defense itself; it was not obligated to order a new trial in full.

Plaintiffs next argue that even if the district court did not err by ordering a limited retrial, it abused its discretion in determining that the proof supporting the application of the defense was so overwhelming that the jury's finding that the defense did not apply was a miscarriage of

4

justice. The government contractor defense recognizes that the "'uniquely federal interest[]' of 'getting the Government's work done' requires that, under some circumstances, independent contractors be protected from tort liability associated with their performance of government procurement contracts." *In re Agent Orange Prod. Liab. Litig.*, 517 F.3d 76, 87 (2d Cir. 2008) (quoting *Boyle v. United Techs. Corp.*, 487 U.S. 500, 504-05 (1988)). To establish the defense, a defendant must show that "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle*, 487 U.S. at 512.

As the parties requested, the court employed a jury verdict form with a general question asking whether defendants were entitled to the defense rather than separate questions regarding whether each element of the defense had been established. We cannot tell, therefore, on which grounds the jury rested its finding. Plaintiffs offered two theories to support the jury's original finding that the defense did not apply. First, plaintiffs argue that there was sufficient evidence to support a finding that defendants were engaged in a parallel commercial operation, separate and distinct from the work performed under Sylvania's contract with the Atomic Energy Commission ("AEC") (the "Contract"), that would preclude the application of the government contractor defense. Plaintiffs cite the testimony of Dr. Davenport, a former Sylvania employee, indicating that such a parallel commercial operation existed. *See* Def. App. 1292-1300; 1565. Dr. Davenport's testimony on this point is unclear as to whether commercial operations were ongoing simultaneously with the work performed under the Contract, or whether Sylvania planned to begin commercial operations at some future point. At various times, Dr. Davenport refers to "forthcoming commercial work," and states that because "[w]e were going to have

5

commercial work as well," he had intended to hire a marketing staff. Def. App. 1292, 1293. This testimony indicates that Sylvania contemplated engaging in commercial work at the Hicksville site *in the future*, not that it was actually engaged in it at the same time it was discharging its obligations under the Contract. At other points, however, Dr. Davenport states that certain work performed at the Hicksville site was in fact "for commercial purposes," thus indicating the existence of a parallel commercial operation. Def. App. 1292.

Summarized, Dr. Davenport's testimony is indeed evidence – albeit weak evidence, in the absence of corroborating testimony – of a parallel commercial operation at Sylvania. Were we tasked with reviewing the district court's grant of judgment as a matter of law, rather than an order for retrial, this evidence, when viewed in the light most favorable to plaintiffs, would be sufficient to defeat such a motion. Indeed, the district court held as much, and denied defendants' post-trial motion for judgment as a matter of law on this ground. In considering defendants' motion for a new trial, however, the district court was not required to view the evidence in a light favorable to plaintiffs, and was permitted to weigh the evidence. *See Raedle*, 670 F.3d at 418.

The evidence supporting the government contractor defense, by contrast, is indeed "overwhelming." *DePascale*, 710 F. Supp. 2d at 286. Dr. Davenport testified that the government "was involved in almost every phase of the work" at the Hicksville site. *Id.* at 282 (internal quotation marks omitted). More specifically, he testified that perchloroethylene and trichloroethylene were used during the production process to ensure that the uranium slugs were free of "impurities or anything that got in th[e] interface [between the aluminum casing and the uranium itself that] would interfere with the cooling rate." Def. App. 1558. Dr. Davenport testified that the AEC "underst[ood] and approve[d] the use of these solvents at the Hicksville

6

facility," and that the decision that these were appropriate solvents for this work "had been made with AEC approval." Def. App. 1560. Nickel was used during the production process to ensure that "the slug would adhere metallurgically to the uranium inside so that heat transfer could go across that gap." Def. App. 1561. Dr. Cohen, Sylvania's former general counsel, testified that the Contract "covered every aspect of the operation at Hicksville." Def. App. 1126. Under the Contract, the AEC "retain[ed] title to all products, by-products, wastage, salvage, work-in-progress, residues and scrap resulting from [property utilized in the work of this contract]." Def. App. 1468-69.

Characterized generally, this evidence indicates that the AEC was intimately involved in Sylvania's manufacture of uranium fuel elements at the Hicksville site. Particularly important, the evidence shows that the AEC understood and approved the use of these solvents, and by implication, was aware of their accompanying risks. Nickel was used in a related step in the production process, which by all accounts was closely supervised by the AEC. Moreover, pursuant to the Contract, all these materials were owned by the government. Although, as recognized by the district court, evidence on these issues is indeed contradictory, we cannot conclude under our deferential standard of review that the court committed reversible error in rejecting plaintiffs' argument that evidence of a parallel commercial enterprise at the Hicksville site supported the jury's finding that the government contractor defense applied. *See Farrior*, 277 F.3d at 635.

The second theory offered by plaintiffs to support the jury's finding regarding the government contractor defense is that defendants did not establish each element of the defense as it applied to plaintiffs' failure-to-warn or premises liability claim. This argument relies on the premise, disputed by defendants, that plaintiffs adequately pled and argued a failure-to-warn

claim at trial. We need not address whether plaintiffs sufficiently pled and argued a failure-to-warn claim to permit such a finding. To the extent plaintiffs argue that the jury's initial finding could have rested on its determination that defendants did not establish the defense applied to plaintiffs' failure-to-warn or premises liability claim, this argument was not made before the district court. It has therefore been waived. *See Bogle-Assegai v. Connecticut*, 470 F.3d 498, 504 (2d Cir. 2006).

III.    Conclusion

Because we conclude that the district court did not abuse its discretion in granting in part defendants' motion for a new trial, we need not address the alleged errors at the first trial raised by defendants. We have considered all of plaintiffs' remaining arguments and find them to be without merit. The judgment of the district court is AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk